IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KHUSNIDIN MAMATKULOV,<br>Petitioner | : | No. 3:26cv99 |
| | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| CRAIG LOWE, Warden of Pike County Correctional Facility; TODD LYONS, Acting Director of Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; PAMELA BONDI, Attorney General of the United States,<br>Respondents | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is a petition for a writ of habeas corpus filed by Petitioner Khusnidin Mamatkulov pursuant to 28 U.S.C. § 2241. The petitioner is a citizen of the Republic of Tajikistan and an immigration detainee in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). He has been charged with entering the United States without admission or inspection in violation of 8 U.S.C. § 1182(a)(6)(A)(i).

Mamatkulov was encountered and arrested at the southern border by the United States Border Patrol in 2024. He was detained for less than one day,

released, and issued a Notice to Appear, which notified him of a hearing date more than two years into the future.

DHS policies changed before that hearing could occur,. Consequently, Mamatkulov is currently detained at the Pike County Correctional Facility ("Pike CCF") in Lords Valley, Pennsylvania under 8 U.S.C. § 1225(b)(2)(A) and has been held without a bond hearing pursuant to that section of the Immigration and Naturalization Act ("INA").

The petitioner, like many others before him, asserts that he is not subject to Section 1225(b)(2)(A). Petitioner contends that 8 U.S.C. § 1226(a) applies to him, because he had been previously released to the interior of the United States. By its terms, Section 1226(a) allows for release from detention on conditional parole or bond.

The specific issues in this case have been reviewed on numerous occasions by other judges in the Middle District of Pennsylvania and by other district courts throughout the country. In accordance with hundreds of decisions and for the reasons set forth below, Mamatkulov's detention falls under Section 1226(a), and his continued detention under Section 1225(b)(2)(A) violates the Due Process Clause of the Fifth Amendment. Mamatkulov's Section 2241 petition will be granted, and he will be ordered released.

**Background**

Mamatkulov is a citizen of Tajikistan. He will turn 22 years old at the end of this month. (Doc. 6-2, Resp. Ex. 1). He was born in a leap year, on February 29, 2004.

On October 23, 2024, United States Border Patrol agents encountered Mamatkulov within a group of 19 individuals approximately 18 miles east of the Tecate Port of Entry between Tecate and Boulevard, California.[1] Id. Mamatkulov was arrested and transported to the San Diego Central Processing Center. He admitted to illegally crossing the international boundary just prior to his arrest. Id.

DHS did not admit the petitioner or parole him after inspection. Id. Instead of detaining him for a longer period, DHS released Mamatkulov on his own recognizance the next morning "due to humanitarian reasons and a lack of detention space." Id. Mamatkulov made his way to Philadelphia and provided ICE with an address there. The government did not impose "Alternatives to Detention" on Mamatkulov, i.e., an ankle monitor. Id. Rather, it provided Mamatkulov with a Notice to Appear before an immigration judge ("IJ") on *September 1, 2026*, or approximately 686 days into the future. (Doc. 6-3, Resp. Ex. 2).

---

[1] Mamatkulov's arrest coordinates (32.600102, -116.338324) indicate that he was at the border wall near Tierra Del Sol, California.

3

The Notice to Appear charged Mamatkulov with violating 8 U.S.C. § 1182(a)(6)(A)(i). Mamatkulov has since filed a Form I-589 Application for Asylum, which remains pending. (Doc. 1, ¶ 3).

On November 25, 2025, Mamatkulov was arrested by U.S. Immigration and Customs Enforcement ("ICE") and transferred to the Pike County Correctional Facility ("Pike CCF") where he has been detained under 8 U.S.C. § 1225(b)(2)(A) and held without a bond hearing. (Doc. 6-4, Notice to EOIR). There, Mamatkulov was served with additional charges of inadmissibility.

Prior to his arrest, Mamatkulov appears to have been residing in the Philadelphia area. Petitioner has no criminal history to the court's knowledge. There is nothing in the record indicating that he attempted to flee immigration authorities at any time.

Rather, Mamatkulov's detention is the product of a Department of Homeland Security ("DHS") policy under which individuals present in the United States without admission or parole are treated as applicants for admission subject to mandatory detention under 8 U.S.C. § 1225(b)(2) rather than discretionary detention under § 1226(a). See Yilmaz v. Warden of the Fed. Det. Ctr. Phila., No. 25-6572, 2025 WL 3459484, at *1 (E.D. Pa. Dec. 2, 2025). The Board of Immigration Appeals ("BIA") has since adopted this interpretation in

Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (B.I.A. 2025).[2] Thus, according to the petitioner, an IJ will be unable to consider any request for bond.

The government opposes Mamatkulov's petition, arguing that: (1) petitioner is lawfully detained under Section 1225(b)(2); and (2) his detention does not offend due process. The Fifth Circuit Court of Appeals recently issued a decision agreeing with the respondents' position. See Buenrostro-Mendez v. Bondi, --- F.4th ----, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026). The court is not bound by that decision. Rather, the dissent is far more persuasive and in line with the opinions from the district courts. Thus, for the reasons that follow, Mamatkulov's Section 2241 petition will be granted, and he will be ordered released from detention.

**Jurisdiction**

Federal district courts are authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Fifth Amendment entitles noncitizens to due process of law in the context of removal proceedings, and thus, they are entitled to notice and an opportunity to be heard, appropriate to the nature of the case. See Trump v. J. G. G., 604 U.S. 670, 673

---

[2] The court need not defer to Hurtado, a decision of an administrative agency. See Loper Bright Enters. v. Raimondo, 603 U.S. 369, 400–01 (2024).

(2025) (citing Reno v. Flores, 507 U.S. 292, 306 (1993); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)).

Mamatkulov filed the instant petition while he was detained within the jurisdiction of this court, and he is still currently in ICE custody within this court's jurisdiction.  Petitioner asserts that his continued detention violates due process.  Thus, the court has habeas jurisdiction over his Section 2241 petition.  Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004).

As for subject-matter jurisdiction, detention-specific questions are reviewable on a habeas petition so long as they are not simply repackaged challenges to actions taken as part of removal proceedings. See Khalil v. President, United States, 164 F.4th 259, 277 (3d Cir. 2026); E.O.H.C. v. Sec'y, U.S. Dep't of Homeland Sec., 950 F.3d 177, 184 (3d Cir. 2020).  Otherwise, challenges to removal are funneled into the petition for review process pursuant to 8 U.S.C. § 1252(b)(9), a statute which strips courts of jurisdiction.[3]  Id. at 274–75.

Here, Mamatkulov does not challenge the removal proceedings or the decision to detain him at all.  He challenges only the legality of his continued detention without a bond hearing under Section 1225(b)(2) as opposed to

---

[3] The court requested that the parties brief the implications of Khalil; however, the government concedes jurisdiction. (Doc. 6 at 5, 19–22).

6

Section 1226(a), which would afford him a bond hearing. This is a detention-specific question. Additionally, Mamatkulov cannot meaningfully obtain relief for this detention-related question following any final order regarding removal. Furthermore, he is not repackaging a detention challenge that is essentially identical to an argument against removal. Consequently, the court has subject-matter jurisdiction to hear the claims within the petition. Accord Montes Ramirez v. Bondi, No. CV 26-0522, 2026 WL 321442, at *2 n. 22 (E.D. Pa. Feb. 6, 2026) (Rufe, J.); Carrero Romero v. Lowe, No. 4:26-CV-00009, 2026 WL 296215, at *3 (M.D. Pa. Feb. 4, 2026) (Brann, C.J.); Laguna v. Rose, No. 26-312, 2026 WL 205960, at *2 (E.D. Pa. Jan. 27, 2026) (Brody, J.); Marcano v. Jamison, No. CV 26-239, 2026 WL 196504, at *2 (E.D. Pa. Jan. 26, 2026) (Sanchez, J.); Mirdjalilov v. Warden of Fed. Det. Ctr. Philadelphia, No. 2:25-CV-7068, 2026 WL 184249, at *4 (E.D. Pa. Jan. 23, 2026) (Leeson, J.); Kourouma v. Jamison, No. CV 26-0182-KSM, 2026 WL 120208, at *3 (E.D. Pa. Jan. 15, 2026) (Marston, J).

**Analysis**

**1. Section 1226(a) Applies to Mamatkulov, Not Section 1225(b)(2)(A)**

This case, like many others before it, turns on whether 8 U.S.C. § 1225(b)(2)(A) or § 1226(a) applies to the petitioner. That determination requires interpretation of Section 1225(b)(2)(A)— "whether the phrase 'an alien seeking admission' in § 1225(b)(2)(A) limits the sweep of persons subject to mandatory

detention under the statute, or whether it merely restates the category of 'applicant for admission' defined by § 1225(a)(1) and reproduced in § 1225(b)(2)(A)'s first phrase." Buenorostro-Mendez, 2026 WL 32330 at *11 (Douglas, J., dissenting op.). "[E]very district court in the Third Circuit to consider this issue has found that detainees similarly situated…are not subject to the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A) and that the [r]espondents' interpretation of the INA is wrong." Patel v. O'Neil, No. 3:25-CV-2185, 2025 WL 3516865, at *4 n.7 (M.D. Pa. Dec. 8, 2025) (Mariani, J) (collecting 56 cases decided on or before December 5, 2025).

The court reaches the same result.

Briefly, Section 1225(b)(2)(A) provides: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A).  Individuals detained under Section 1225 are not entitled to a bond hearing. See Jennings v. Rodriguez, 583 U.S. 281, 297 (2018) (Alito, J., plurality op.) ("And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

"Applicant for Admission" — Section 1225(a)(1) provides that "[a]n alien present in the United States who has not been admitted (whether or not at a

8

designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1).  Definitionally, all unadmitted persons, including Mamatkulov, are "applicants for admission."

"Alien Seeking Admission" – Unlike "applicant for admission," the phrase "alien seeking admission" is not defined in Section 1225.  The government argues that every "applicant for admission" is synonymous with "seeking admission." (Doc. 6 at 24).  According to that view, this would subject all unadmitted aliens to mandatory detention without bond pending removal proceedings regardless of whether they are located at the border or have spent months or years living in the interior.  Under that reading, "for purposes of immigration detention, the border is now everywhere." Buenrostro-Mendez, No. 25-20496, 2026 WL 323330 at *18 (5th Cir. Feb. 6, 2026) (Douglas, J., dissenting op.).

In contrast, the consensus district court view is that the phrase "alien seeking admission" does independent work and requires "active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry[,]" Quispe v. Rose, No. 3:25-CV-02276, 2025 WL 3537279, at *5 (M.D. Pa. Dec. 10, 2025) (Mehalchick, J.) (citations omitted), and does not apply

9

to "noncitizens like [p]etitioner who have resided in the United States for years[,]" Patel, 2025 WL 3516865 at *5 (citations omitted).

As these district court cases and the Buenorostro-Mendez dissent have recognized, to adopt the government's position would, *inter alia*, negate the plain meaning of the text, ignore context and history, violate the rule against surplusage, and render the mandatory detention of "criminal aliens" under Section 1226(c) (as expanded last year by the Laken Riley Act) as arising from a redundant statutory provision. See Patel, 2025 WL 3516865 at *5 (citing Centeno Ibarra v. Warden of the Fed. Det. Ctr. Philadelphia, No. CV 25-6312, 2025 WL 3294726, at *6 (E.D. Pa. Nov. 25, 2025) (Rufe, J.)); Buenorostro-Mendez, 2026 WL 323330 at *11–*16 (Douglas, J., dissenting op.).

Here, Mamatkulov was residing in the Philadelphia area for approximately 13 months when he was detained. Consequently, a reading of Section 1225(b)(2)(A) against petitioner's circumstances reflects that this statute does not apply to him.[4]

Mamatkulov's detention is thus governed by Section 1226(a). Jennings, 583 U.S. at 288 (Alito, J., plurality op.). Section 1226(a) "sets out the default

---

[4] Mamatkulov's pending asylum application does not make him an "alien seeking admission" or provide him with lawful entry to the United States; rather that application is to obtain a lawful means to remain here. Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 488 n.7 (S.D.N.Y. 2025).

rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" Id. (quoting 8 U.S.C. § 1226(a)). Pending such decision, the Attorney General may: 1) "continue to detain the arrested alien"; and 2) "may release the alien on…bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or…conditional parole[.]" 8 U.S.C. § 1226(a)(1)–(2). "At a bond hearing, a noncitizen 'may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community.'" Quispe, 2025 WL 3537279, at *6 (quoting Nielsen v. Preap, 586 U.S. 392, 397–98 (2019)).

### 2. Mamatkulov Will Be Released

The petitioner enjoys the protections of the Due Process Clause of the Fifth Amendment. J.G.G., 604 U.S. at 673. Whether Mamatkulov's continued detention under 8 U.S.C. § 1225(b)(2)(A) violates procedural due process requires a consideration of: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and 3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

Each factor favors Mamatkulov. First, his private interest is the interest of not being physically detained by the government, which "is the most elemental of liberty interests[.]" Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004). "The restriction of liberty is particularly acute here where, absent a bond hearing, he would be detained for months or even years while his case proceeds." Cunin v. McShane, No. 3:25-CV-1887, 2025 WL 3542999, at *2 (M.D. Pa. Dec. 10, 2025) (Neary, J.) (citation omitted). Second, he has been detained erroneously under Section 1225(b) without any apparent procedural safeguards, including the ability to obtain a bond hearing. See id. ("There is a certainty—not merely a risk—that the failure to grant [petitioner] a bond hearing would unlawfully deprive him of the opportunity to make the case for his release and incarcerate him indefinitely."); see also Patel, 2025 WL 3516865, at *6 (citing Bethancourt Soto v. Soto, No. 25-CV-16200, --- F. Supp. 3d ----, 2025 WL 2976572, at *8 (D.N.J. Oct. 22, 2025); Quispe, 2025 WL 3537279, at *7 (citations omitted). Third, the government's interest in detaining noncitizens "to ensure the appearance of aliens at future immigration proceedings and to prevent danger to the community" is important, but there is no indication that Mamatkulov is a convicted criminal or engaged in any criminal activity. See Quispe, 2025 WL 3537279, at *7. In response to the petition, the government has not provided any information suggesting that Mamatkulov is a flight risk. Rather, upon entry to this country, the government

believed releasing the petitioner from custody was the humanitarian thing to do. And they gave him a hearing date more than two years into the future. Consequently, Mamatkulov's continued detention without bond under Section 1225(b)(2)(A) violates his procedural due process rights. The court will therefore grant the petition for writ of habeas corpus.

Habeas courts "have the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." Boumediene v. Bush, 553 U.S. 723, 779 (2008). Therefore, respondents shall immediately release Mamatkulov from their custody because he was unlawfully detained without the opportunity for a bond hearing.[5] See Kashranov v. Jamison, No. 2:25-CV-05555-JDW, 2025 WL 3188399, at *8 (E.D. Pa. Nov. 14, 2025) (Wolson, J).

Respondents, including DHS and ICE are permanently enjoined from re-detaining Mamatkulov under 8 U.S.C. § 1225(b)(2)(A). Id. Respondents are temporarily enjoined from re-arresting Mamatkulov for a period of 14 days to ensure that this habeas remedy is effective. Id. Respondents, including ICE,

---

[5] To the extent that Craig Lowe, Warden of Pike CCF is the only proper respondent in this matter, Lowe is acting as an agent of ICE and the government will be bound by the order. See Vadel v. Lowe, No. 3:25-CV-02452, 2025 WL 3772059, at *1 n.1 (M.D. Pa. Dec. 31, 2025).

may not impose any other restrictions on Mamatkulov's release, including any form of body-worn electronic monitoring. Mamatkulov may move to reopen this matter if the government seeks to detain him under Section 1226(a) and fails to schedule a timely bond hearing in which an IJ assesses whether he poses a flight risk or a danger to the community. Id.

### 3. Attorneys' Fees and Costs

Finally, Mamatkulov requests attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. The Third Circuit recently confirmed that a habeas proceeding challenging immigration detention under 28 U.S.C. § 2241 is a "civil action" for purposes of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), and that the EAJA "unambiguously applies to habeas challenges to immigration detention under 28 U.S.C. § 2241." Michelin v. Warden Moshannon Valley Corr. Ctr., No. 24-2990, 2026 WL 263483, at *1–2, *10 (3d Cir. Feb. 2, 2026). Mamatkulov will thus be permitted to file a motion for costs and fees pursuant to the EAJA within 30 days of the entry of judgment. 28 U.S.C. § 2412(d)(1)(B); Villa Hernandez v. Kunes, No. 1:25-CV-01847, 2026 WL 411726, at *7 (M.D. Pa. Feb. 13, 2026) (Wilson, J.).

**Conclusion**

The petition for writ of habeas corpus under 28 U.S.C. § 2241 will be granted with provisions consistent with this memorandum. An appropriate order follows.

Date: 2/18/26

_____
JUDGE JULIA K. MUNLEY
United States District Court